ALLEN, Judge.
Appellant, plaintiff in the lower court, brings appeal from a summary final decree for appellees, defendants in the lower court. Appellees have filed motions to dismiss the ■appeal and to strike portions of appellant’s reply brief, consideration of which was deferred until consideration on the merits.
In 1961, appellant filed suit in chancery ■against the appellees and other defendants. By her suit appellant sought to quiet title to lands allegedly owned by her and to establish boundary lines between her land and the land held by appellees. Appellees answered, alleging several affirmative defenses, including res judicata, and moved for summary final decree based on the defense of res judicata. After hearing and -submission of documents, the motion was granted, summary final decree was entered and this appeal ensued.
The facts surrounding the instant case and the litigation pleaded as res judicata are as follow:
The appellant was the owner of certain land located on lower Captiva Island in Lee County, said land described in the original 1875 U. S. Government Survey as U. S. Government Lot 2 of Section 22, Township 45 South, Range 21 East. Appellees are owners of certain similarly located lands described as being in Lot 1 of Section 22. Although the original Government Survey indicates that the two lots are separated by a bay, subsequent erosion and accretion have substantially altered the lands in question.
In 1947, appellant and her husband, now deceased, brought an action to quiet title against appellee, American Hotels, as lessee, and its predecessor in title, the fee owner at that time. The suit sought to quiet title to the following land:
“Starting at intersection of Gulf of Mexico and half Section line, Section 22, Township 45, South, Range 21 East, thence along said half Section line to Bryant Bayou; thence along shore of Bryant Bayou Slough to Pine Island Sound; thence along shore of Pine Island Sound to Red Fish Pass; thence along shore of Red Fish Pass to Gulf of Mexico; thence along shore of Gulf of Mexico to point of beginning, a total distance of 7800 feet, the land within said boundary lines consisting of approximately fifty-five acres, all of which will fully appear by reference to blueprint attached Marked ‘Exhibit No. 2’ ”.
This action was, on motion of appellees, transferred to the law side of court. Appellants thereupon filed a declaration in ejectment claiming appellees were wrongfully possessed of Lot 2 of Section 22. On motion of appellees, appellants were compelled to amend their declaration and fur *762 ther describe the disputed lands. The amendment described the lands as:
"Beginning at the artesian well which constitutes the starting point of lease description (recorded in Mise. Book 22 at Page 478), of ‘All of that portion of Government Lot 1, Sec. 22, Township 45 South, Range 21 East’, thence South 45 degrees 25' W. to the shore of the Gulf of Mexico, thence Northerly along the shore of the Gulf of Mexico to Redfish Pass (so called), thence Northeasterly along the shore line of Redfish Pass to Pine Island Sound, thence Southeasterly along the shore of Pine Island Sound to the mouth of a slough connecting Pine Island Sound with Bryant Bayou, thence in Southerly direction through the center line of the said slough to Bryant Bayou, thence Southerly along the West shore of Bryant Bayou to a point East of the point of beginning, thence West to the point of beginning, being all that part of the land, described in the said lease, lying West of Bryant Bayou and the slough connecting Bryant Bayou with Pine Island Sound, and constitutes the portion of Lot 2, Sec. 22 Tp. 45 S, R. 21 E. described in said lease.”
The ejectment action was tried, a verdict and judgment entered for appellee and the Supreme Court affirmed the judgment. Stengel v. Chadwick, Fla.1950, 45 So.2d 511.
In 1961, the action to quiet title and establish boundaries, with which this appeal is concerned, was instituted. Appellees are successors in title to defendants in the first action. In the recent suit appellant alleged ownership of Lot 2 and further alleged that land described in appellees’ deeds as being in Lot 1 was and is in Lot 2. She asked that the boundary line between the lots, as indicated on a 1961 private survey, be established as the correct boundary. As noted earlier, a summary decree was entered against appellant and this appeal ensued.
Appellees moved to dismiss the appeal for appellant’s failure to include portions of the record necessary to decision in the appendix to her brief and has moved to strike portions of the appendix to the reply brief which incorporates portions of the record by reference.
Since we shall affirm the lower court, we-prefer not to pass on either of the appellees’ motions above mentioned.
This suit involves the same parties and' their successors in title as the suit which, had previously been brought in 1947. The property involved was located on the northern half of Section 22, Township 45 South,. Range 21 East, Captiva Island, Lee County, Florida. At one time this part of the-island, lying between the Gulf of Mexico and Pine Island Sound, was composed of Lot 2 on the West and Lot 1 on the East. The appellants owned Lot 2 and the ap-pellees Lot 1.
In the first trial of the case there was-testimony as to whether or not Lot 2 had. in fact disappeared and that Lot 1 constituted the property now remaining on said island.
In the appendix to appellees’ brief there-appears a charge given by the late Judge-Harrison at the first trial of this case:
“Therefore, you should first determine whether there is in existence a government lot two. If you find from a consideration and comparison of all the-testimony that there is no lot two in-existence that settles this case. If there is a lot two, then the defendants-having admitted that the plaintiffs own. lot two and claim, assert that they own lot one, you would then find in favor of the defendants (sic) and would of necessity be required to describe that parcel of land within lot two which plaintiffs are entitled to recover from the defendants.”
The jury returned a verdict in favor of' the defendants and the trial judge entered a judgment in favor of the defendants,. *763 Rosamond Chadwick, a widow, and The American Hotels Company, a Connecticut corporation, and against the plaintiffs, Frederick W. Stengel and Olive F. Stengel, his wife.
In the present suit the defendant-appel-lees moved for a summary judgment on the .grounds of res judicata and introduced the •evidence of the entire proceedings of a former case between the parties. The trial judge, from a study of the record, depositions, etc., held that the same issues were involved in this case that were involved in the former case and rendered judgment in favor of the present appellees.
In excerpts from the deposition of the plaintiff below, appellant here, Olive F. .Stengel, the following appears:
“Q Are you the same Olive F. Stengel who brought suit against the American Hotels and the Chadwicks in 1947?
“A Yes. That is the first trial we just mentioned.
'“Q Do you remember when that case was tried?
“A No, I don’t.
“Q There is in the court file in this case we are talking about now a certified transcript of those prior proceedings which indicates that there was a trial in about April of 1949. Would you disagree with that date?
******
■“A No, I imagine that would be right.
“Q Did you testify at that trial?
“A Yes.
“Q Is your testimony here today any different than it was at that trial?
■“A No.
“Q It’s basically the same?
“A Well, of course, it’s a great many years added to it, so it changes it to a certain extent, but I haven’t changed anything that would be the same, would stay the same. You see, different things make a difference.
******
“Q Aren’t you claiming the same land in this suit that you claimed in the first suit?
“A Well, possibly, although I am net absolutely certain just what finally is in the suit in the way of land.
“Q Did you claim in the first suit that you owned a large portion of this upper part of Captiva Island?
******
“A Well, if you call that a large portion, yes.
“Q Isn’t that what you are claiming now in this suit?
“A Yes, but it’s entirely different from what the other was.
“Q How is it different, Mrs. Stengel ?
“A Well, I suppose because somebody is trying to sell this land, and that is the reason I have to try and save it, and the other was that they were claiming it as their own, the Chad-wicks.
“Q Didn’t they claim it as their own in the first suit?
“A That is what I mean. That was the first suit against them. They were claiming it, trying to make believe that it was their own, trying to prove it was their own, and in this case it’s the alleged buyers from them trying to sell it to somebody else.
“Q So you think the people are different?
“A Well, I don’t know just what you mean by ‘the people are different.’ It isn’t against exactly the same people.
“Q Is that the difference you see in this second lawsuit?
“A Well, not necessarily, because I wouldn’t call it the same kind of a suit at all anyway.
*764 "Q Didn't the Chadwicks claim in the first suit that your Government Lot 2 had washed away?
“A Yes.
“Q And you claimed it didn’t?
“A Naturally, or there wouldn’t have been anything to bring this suit about.”
Part of the testimony in the first suit was to the effect that the appellant’s Government Lot 2 had washed away and the property that was left was Lot 1, owned by the appellees in the first suit, as well as in the second suit.
Whether it should be properly called res judicata or estoppel by judgment, we think the lower court properly held that the issues between the parties had previously been tried in the first suit and should, therefore, be affirmed in the instant suit.
Affirmed.
SHANNON, C. J., and STURGIS, WALLACE, Associate Judge, concur.